# THE STATE OF IOWA:

## DES MOINES, JUNE TERM, A. D. 1875.

IN THE THIRTIETH YEAR OF THE STATE.

---

PRESENT:

HON. WILLIAM E. MILLER, CHIEF JUSTICE.
    "    CHESTER C. COLE,
    "    JAMES G. DAY.    } JUDGES.
    "    JOSEPH M. BECK,

---

## WILSON v. VAUGHN.

1. **Estoppel:** IN PAIS. In an action to enjoin the maintenance and compel the removal of a certain mill-dam on the ground that it caused back water, to the detriment of plaintiff's mill situated upon the same stream, it appeared that before the erection of the mill or dam complained of, plaintiff advised defendant that there was sufficient fall, and that he himself had leveled the creek; that defendant proceeded to construct the works at a large expense, with plaintiff's knowledge and without his objection: *Held*, that he was estopped from claiming the relief asked.

2. **Practice:** VERDICT: CONFLICT OF EVIDENCE. Where the evidence in support of a motion to set aside the report of a referee on the ground of interest is conflicting, the Supreme Court will not interfere with the decision of the court below.

*Appeal from Fremont District Court.*

TUESDAY, MARCH 16.

THIS suit was brought to enjoin the defendant from maintaining, and for the removal of, his mill-dam, on the ground that it backs the water upon the mill wheel of the plaintiff, situated several miles above on the same stream, and to recover damages for injuries caused by such backwater. By consent the cause was tried by a referee, who reported in favor of defendant, upon which judgment was rendered for defendant. Plaintiff appeals.

*Cornish & Anderson,* for appellant.

*Harvey & Mitchell,* for appellee.

MILLER, CH. J.—The referee made the following report of his findings of fact and law in the case.

" I.   That plaintiff, being the owner of the mill-site on Walnut creek, in Fremont county, commenced getting the

1. ESTOPPEL: in pais.

timbers for his mill in the month of March, 1870, and commenced the erection of his dam in the month of July, 1870, and completed his dam in September, 1871, but commenced using the dam before it was completed, viz: some time in May, 1871. The mill was intended for a saw mill, to which plaintiff had, prior to the commencement of this suit, attached a pair of burrs for grinding corn. Said mill has not been completed, but being arranged with a basement story, the machinery of the mill was placed in the same and on the floor immediately above said basement story, and is without covering except that a portion of the machinery is covered with a temporary covering of boards. The second story of the mill as contemplated is not yet built, but the mill has been used in this condition since May, 1871. Some of the machinery of the mill is faulty, and other of the machinery is not properly set. The wheel that drives the machinery is set from 12 to 14 inches too low in case there was no dam below the mill, and the arrangement is imperfect for the dis-

charge of the water when it leaves the wheel that drives the machinery of the mill. All these, together with a small stream of water emptying in at the place where said wheel discharges, hinder the power from doing what it otherwise would do, and in case there was no dam below backing up the water. The mill never has been in condition to saw to exceed from 600 to 800 feet of lumber per day out of ordinary logs. That with the wheel properly set, with free discharge for the water to get out of the way, and the other faults above stated remedied, the mill has capacity to cut from 2000 to 2500 feet per day; and relieved of backwater, the faults above stated being remedied, its power is about 1000 feet more per day.

II. There is, at the ordinary stage of the creek, about 3 feet of backwater over the wheel of plaintiff's mill as the wheel now stands, and about 2 feet of backwater over the point where said wheel would stand, if properly set, in case there was no dam below, and said backwater is occasioned by the defendant's dam below.

III. The defendant, A. B. Vaughn, the owner of a mill site about 2¼ miles on a straight line, and about 4 miles by the creek, below plaintiff's mill, on the same creek, commenced to improve the same, by building a flouring mill, in the month of May, 1871, and commenced building his dam on the 9th or 10th of September, 1871, and completed it to a height so it had about 7½ feet head on 21st of same month. That said improvement was completed on the 21st of September, 1871, at a cost to defendant of $10,400.

IV. Before the defendant determined to build his mill or erect his dam, he advised with the plaintiff in relation to erecting his mill and dam, and was verbally advised by him to build. Said plaintiff told defendant that he was acquainted with the stream, and had leveled it from its mouth to 10 or 12 miles above the contemplated mill site, and assured him that there was no danger of backing the water up to his mill, and encouraged defendant to go on and build his custom mill by offering and agreeing, in case he would build such a mill, that he would pay him $100 to assist him in building it; that his locality was such that he must have known at the time the

improvement was being made that defendant was erecting the mill as he advised him, and well knew of the large expenditures of defendant in the erection of said mill and dam while the same was being erected, and the defendant expended the sum of $10,400 in making the improvement, upon the opinions and representations, as well as the verbal license, given him by the plaintiff,—upon the faith of which he made said expenditures, and said defendant was persuaded not to level said stream between the two dams, by the plaintiff assuring him there was no necessity of it, as he had already leveled it.

V.   The conclusion of law is, that said plaintiff has barred himself of any cause of action, and that defendant have judgment for costs of this suit, and recommend that the same be so entered.                            S. CLINTON, *Referee.*

September 8, 1872."

We have carefully read and considered the evidence in the case, and find that it abundantly supports the findings of fact reported by the referee.

The conclusion of law upon these facts stated in the referee's report is also correct.   That the facts found by him estop the plaintiff from claiming the relief demanded, we entertain no doubt.   The doctrine of estoppel is clearly applicable.   See *The B., C. R. & M. R'y Co. v. Stewart,* 39 Iowa, 267, and cases cited;   *Lamb v. The B., C. R. & M. R'y Co.,* 39 Iowa, 333.

VI.   In the court below the plaintiff moved to set aside the report of the referee upon the ground, among others, that he 2. PRACTICE: was interested in the case.   In support of this verdict: conflict of evidence. ground in the motion, plaintiff filed his own affidavit and the affidavits of two other persons, tending to show that the referee, Samuel Clinton, Esq., had an interest in the Council Bluffs Foundry Company as a stockholder therein; that said company had a claim upon the defendant and a mechanic's lien on his mill property, which lien would be rendered less valuable if the finding had been against, instead of for, the defendant; also tending to show that the law firm, of which the referee was a member, were attorneys for said foundry company.

Counter affidavits, of the referee and others, were filed tending to contradict the affidavits filed in support of the motion. The court below decided the motion against the plaintiff. In this conflict of evidence this decision is conclusive of the disputed facts. We may add, however, that we think the court below decided correctly upon the affidavits before it. The judgment must be

AFFIRMED.